UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ANTHONY MICHAEL ASHLEY,

                Petitioner,

v.

MATT MACAULEY,

                Respondent.

_____/

Case No. 1:25-cv-21

Honorable Phillip J. Green

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 4.)  Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases.  The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings.  "An individual or entity

named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding— the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.") .[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

## I.    Factual Allegations

Petitioner Anthony Michael Ashley is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  Following a jury trial in the Eaton County Circuit Court, Petitioner was convicted of one count of first-degree home invasion, in violation

---

matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

of Mich. Comp. Laws § 750.110a(2); one count of assault with a dangerous weapon (felonious assault), in violation of Mich. Comp. Laws § 750.82(1); possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b(1); and one count of third-degree fleeing and eluding a police officer, in violation of Mich. Comp. Laws § 257.602a(3). *See People v. Ashley*, No. 359547, 2023 WL 5313583, at *1 (Mich. Ct. App. Aug. 17, 2023). The trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to "serve 35 to 70 years in prison for the first-degree home invasion, 10 to 15 years in prison for the felonious assault conviction, two years in prison for the felony-firearm conviction, and 10 to 25 years in prison for the third-degree fleeing and eluding conviction." *Id.* Moreover, the trial court "ordered that the sentence for felony-firearm be served consecutively to the sentence for felonious assault, and that the additional sentences be served concurrently." *Id.* The trial court also ordered that "all the sentences be served consecutively to [Petitioner's] existing parole sentence." *Id.*

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising the following three claims of error: (1) the prosecution presented insufficient evidence to convict Petitioner of aiding and abetting either felonious assault or felony-firearm; (2) Petitioner was entitled to resentencing because the trial court exceeded the guidelines by 100 months without providing an explanation; and (3) Petitioner's judgment of sentence

4

should be corrected to show that the felony-firearm sentence was consecutive only to

the felonious assault sentence.  (ECF No. 1-1, PageID.26.)

The Michigan Court of Appeals set forth the following facts underlying

Petitioner's convictions:

> On April 7, 2020, [Petitioner], his half-brother, Matthew Eckhart, and [Petitioner's] two minor stepchildren, committed a home invasion, which led to an assault and a subsequent high-speed police chase. On that day, a homeowner was working in her basement with a handyman, Scottie Hatcher, when they heard footsteps upstairs. The homeowner went upstairs and saw a stranger, later identified as [Petitioner's] 13-year-old stepson, IR, standing in her kitchen. The homeowner demanded that IR leave and followed him out to the driveway, where she saw a van that she did not recognize. IR got into the back seat of the van and began honking the horn. Meanwhile, Hatcher had come up from the basement and discovered that his phone was missing from its charger in the kitchen. He went outside to the van and confronted IR about his missing phone.
>
> At that time, [Petitioner], Eckhart, and [Petitioner's] other stepson appeared from the far side of the homeowner's garage. [Petitioner] had Hatcher's cell phone in his hand; Hatcher approached [Petitioner] and took the phone from [Petitioner]. Hatcher then reached into the van and took the keys out of the ignition; he told [Petitioner] and the others that they were not leaving until the police arrived. [Petitioner] demanded that Hatcher return the keys, but Hatcher refused. [Petitioner's] brother, Matthew Eckhart, then pulled a firearm from the van and approached Hatcher, pointed the gun at him, and demanded the van keys. [Petitioner] also continued to demand the keys. The homeowner called the police, then pleaded with Hatcher to return the keys. Hatcher threw the keys on the ground; [Petitioner] retrieved the keys and drove away in the van with Eckhart and [Petitioner's] step-children as passengers.
>
> Officers from the Eaton County Sheriff's Department, Michigan State Police, and Lansing Police Department sighted the van on Lansing Road and pursued the van onto eastbound I-96 and Waverly Road in Lansing. The officers attempted to stop [Petitioner's] van using roadblocking maneuvers, but were unsuccessful. During one of the attempted roadblocks, [Petitioner] ran into the side of a police car. Eventually, [Petitioner] drove onto Martin Luther King, Jr. Boulevard and drove north at speeds of over 100 miles per hour through Lansing. When

[Petitioner] and the officers arrived at a T-intersection, the officers stopped the van by blocking it. Two of the passengers fled on foot; police pursued them and apprehended [Petitioner] and all the passengers.

*Ashley*, 2023 WL 5313583, at *1–2.

On August 17, 2023, the court of appeals rejected Petitioner's sufficiency and upward departure claims of error. *See id.* at *1. The court of appeals agreed with Petitioner that his judgment of sentence required correction because it "erroneously indicate[d] that the felony-firearm sentence was to be served consecutively to *each* of the other three sentences." *Id.* at *1 n.1 (emphasis in original). The court of appeals remanded the matter "to the trial court for the ministerial task of correcting the judgment of sentence" and did not retain jurisdiction. *Id.* at *4. The Michigan Supreme Court denied Petitioner's application for leave to appeal on January 4, 2024. *See People v. Ashley*, 998 N.W.2d 706 (Mich. 2024).

Petitioner filed his federal habeas corpus petition on January 6, 2025. Petitioner used this Court's form for filing a § 2254 petition, but for his grounds for relief, he simply refers the Court to the "[a]ttached [s]tate [a]ppeal" and that his grounds for relief are "enclosed in the [a]ppeals court filing." (§ 2254 Pet., ECF No. 1, PageID.5.) Petitioner attached to his § 2254 petition a copy of the supreme court's order denying his application for leave to appeal, a copy of the court of appeals' opinion, and a copy of his brief on appeal. Thus, the Court construes Petitioner's § 2254 petition to raise as his grounds for relief the claims of error that he asserted on direct appeal. However, as noted *supra*, Petitioner has already received relief from the Michigan Court of Appeals with respect to his third ground concerning the

erroneous initial judgment of sentence. In light of that fact, the Court construes the following two grounds for relief to be before the Court:

> I.   The prosecution presented insufficient evidence to convict [Petitioner] of aiding and abetting either felonious assault or felony-firearm. Those charges must be vacated and dismissed.
>
> II.  Resente[n]cing is required because Judge Maurer exceeded the guidelines by 100 months without explaining why a sentence within the guidelines would have been disproportionately short and without justifying the extent of the departure.

(ECF No. 1-1, PageID.26.)

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

8

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was

9

unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.    Ground I—Sufficiency of the Evidence

As his first ground for relief, Petitioner contends that the prosecution "presented insufficient evidence to convict [Petitioner] of aiding and abetting either felonious assault or felony-firearm."  (ECF No. 1-1, PageID.26.)  According to Petitioner, the evidence presented at trial "failed to prove that [Petitioner] aided Matthew Eckhart to possess or use the handgun Eckhart produced during the confrontation with Scottie Hatcher."  (*Id.*, PageID.42.)  Essentially, Petitioner contends that there was insufficient evidence that he knew that Eckhart possessed a firearm.  (*Id.*)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

10

a reasonable doubt." *Id*. at 319.  The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.  Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence.  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency challenge:

> We review de novo a challenge to the sufficiency of the evidence supporting a conviction. *People v. Byczek*, 337 Mich. App. 173, 182; 976

> N.W.2d 7 (2021). When evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *People v. Harris*, 495 Mich. 120, 126; 845 N.W.2d 477 (2014). In doing so, we draw all reasonable inferences in support of the verdict. *People v. Oros*, 502 Mich 229, 239; 917 N.W.2d 559 (2018).

*Ashley*, 2023 WL 5313583, at *2. Although the court of appeals cited state authority as the source of the standard, *Harris* cites to *People v. Sherman-Huffman*, 642 N.W.2d 339 (Mich. 2002), which in turn cites to *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992). *Wolfe* identifies *Jackson* as the source of the standard. *See Wolfe*, 489 N.W.2d at 751.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal

court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406.  Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts.  28 U.S.C. 2254(d).

The Michigan Court of Appeals first set forth the elements for felonious assault and felony-firearm, and then set forth what must be shown to support an aiding and abetting theory.  *See Ashley*, 2023 WL 5313583, at *2.  The court of appeals then applied the sufficiency standard as follows:

> In this case, [Petitioner] and Eckhart embarked upon the felony of home invasion. There is no dispute that during the home invasion, Eckhart assaulted Hatcher with a gun, thereby committing the offenses of felonious assault and felony-firearm. [Petitioner] argues that he did not aid and abet in the felonious assault or the felony-firearm because he did not know that Eckhart had a firearm in the van. Regardless of whether [Petitioner] knew about the gun before embarking on the home invasion, the evidence presented at trial demonstrated that [Petitioner's] words and actions supported, encouraged, or incited the felonious assault committed by Eckhart. [Petitioner] was arguing with Hatcher about the van keys when Eckhart retrieved a firearm from the van and pointed it at Hatcher. [Petitioner] then continued to demand the keys to the van without expressing surprise or making any attempt to dissuade Eckhart from pointing the gun at Hatcher. Although Eckhart was holding the gun, [Petitioner] and Eckhart acted in concert to use the firearm to augment [Petitioner's] demand that Hatcher return the van keys to enable them to flee together in the van.

13

> The same evidence supports the jury's finding that [Petitioner] supported, encouraged, or incited Eckhart's violation of the felony-firearm statute. When Eckhart pointed the gun at Hatcher, [Petitioner] did not protest or attempt to dissuade Eckhart. Rather, [Petitioner] took advantage of the firearm to intimidate Hatcher to return the van keys. Regardless of whether [Petitioner] knew about the gun before embarking on the criminal enterprise, [Petitioner's] actions after Eckhart retrieved the gun from the van supports the jury's finding that [Petitioner] aided and abetted Eckhart in using the gun to assault Hatcher.
>
> Moreover, the offenses occurred while [Petitioner] and Eckhart were together engaged in the crime of home invasion. As discussed, "a defendant who intends to aid, abet, counsel, or procure the commission of a crime is liable for that crime as well as the natural and probable consequences of that crime." *Robinson*, 475 Mich. at 3. An aider and abetter's knowledge of the principal's intent can be inferred from the circumstances surrounding the event, *People v. Bennett*, 290 Mich. App. 465, 474; 802 N.W.2d 627 (2010), and even minimal evidence and reasonable circumstances suffice to demonstrate the defendant's knowledge, *People v. Miller*, 326 Mich. App. 719, 735; 929 N.W.2d 821 (2019).
>
> Here, [Petitioner] intentionally embarked upon the crime of home invasion with Eckhart. A natural and probable consequence of the home invasion was being confronted by someone during the home invasion, which led to an assault with a weapon during [Petitioner's] and Eckhart's attempt to flee the crime scene. [Petitioner] is guilty as an accomplice for "those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *Robinson*, 475 Mich at 15. Viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support [Petitioner's] convictions of felonious assault and felony-firearm.

*Ashley*, 2023 WL 5313583, at *3.  The court of appeals' analysis appears to faithfully track the requirements of *Jackson*.  The court reviewed the elements that the prosecutor was required to prove and then looked at the evidence presented to see if there was a basis for a rational trier of fact to find that the essential elements were proven beyond a reasonable doubt.

14

By relying upon his appellate brief for his § 2254 petition, Petitioner essentially relies upon the arguments that were raised in—and rejected by—the court of appeals. As noted above, Petitioner argues that he did not know about the firearm's existence before it was revealed by Eckhart, and that lack of evidence regarding his knowledge renders his convictions for felonious assault and felony-firearm unconstitutional.  The appellate court's opinion reveals that, under state law, Petitioner is wrong: knowledge of the existence of the weapon before it is used is not necessary to establish that Petitioner aided and abetted the individual who actually handled the firearm. The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Thus, any conclusion by the state courts that prior knowledge of the existence of the firearm was not necessary to establish aiding and abetting liability under state law is axiomatically correct.

Moreover, the appellate court's recitation of the facts in evidence relating to Petitioner's knowledge and use of the weapon once it had been deployed by Eckhart is "presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  Petitioner can overcome that presumption with clear and convincing evidence; he has not.  He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

Similarly, Petitioner fails to demonstrate that the inferences identified by the court of appeals are unreasonable. *Jackson* holds that it is the fact-finder's province to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The *Coleman* Court described a reasonable inference as an inference that a rational factfinder could make from the facts. The inferences identified by the court of appeals rationally flow from the underlying facts. The inferences are not compelled by those facts. The inferences may not even be more likely than not; they are simply rational. *Id*. at 656. Nothing more is required. Petitioner offers the Court nothing to suggest that the appellate court's inferences were irrational. Thus, Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support the felonious assault and felony-firearm verdicts is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground I.

### B.    Ground II—Sentencing Error

As his second and final ground for relief, Petitioner contends that the trial judge erred by "exceed[ing] the guidelines by 100 months without explaining why a sentence within the guidelines would have been disproportionately short and without justifying the extent of the departure." (ECF No. 1-1, PageID.26.) Petitioner indicates that his guidelines called for a minimum sentence between 99–320 months, and that the trial judge instead imposed "a 420-month minimum term." (*Id*.,

PageID.47.)  He faults the trial judge for "never indicat[ing] that he had consulted the guidelines" and for failing to "explain why the sentence imposed was more proportionate to offense and offender."  (*Id.*, PageID.48.)

The Michigan Court of Appeals applied state law to reject Petitioner's argument, noting:

> Here, in justifying the upward departure, the trial court observed that [Petitioner's] extensive criminal history, which included 31 felonies and 16 misdemeanors, began when defendant was 15 years old and only ceased when defendant was incarcerated. The trial court noted that "breaking and entering in the houses and stealing valuables from the owners of that home is [Petitioner's] main source of income, or what he would call his work." [Petitioner] committed the instant first-degree home invasion while on parole for a second-degree home invasion conviction. The trial court also observed that on this occasion, [Petitioner] involved his two minor stepchildren in his criminal activity and appeared to be "training the next generation of criminals and thieves by including children" in the home invasion.
>
> The trial court also emphasized that [Petitioner] had engaged "in one of the most dangerous fleeing and eluding [events the] court has ever seen" by driving at speeds well over 100 miles per hour on a main thoroughfare in the City of Lansing, running a red light at a major intersection. This conduct is not adequately considered by the sentencing guidelines. Fifteen points were assessed for Offense Variable (OV) 19, which states that 15 points should be scored when "[t]he offender used force or the threat of force against another person ... to interfere with, [or] attempt to interfere with[,] . . . the administration of justice or the rendering of emergency services." MCL 777.49(b). The scoring of OV 19 does not account adequately for the fact that [Petitioner] engaged in a dangerous car chase and drove at speeds of over one hundred miles per hour through "a main thoroughfare in the City of Lansing."

*Ashley*, 2023 WL 5313583, at *4.  Overall, the court of appeals, concluded, the "trial court's departure of 100 months from the guidelines range of 99 to 320 months did not violate the principle of proportionality."  *Id.*

Here, Petitioner merely relies upon the arguments that were raised in—and rejected by—the court of appeals.  The term disproportionate is derived from state court authority regarding sentencing.  *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990).  As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  Thus, Petitioner's claim that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion.  *Steanhouse*, 902 N.W.2d at 335.  The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis.  *Id*. at 335–37.  In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

18

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus.").  Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, Petitioner's claim based upon *Milbourn* and *Steanhouse* is not cognizable in this habeas corpus action.

Moreover, to the extent Petitioner may be asserting his disproportionality claim as a violation of the Eighth Amendment's proscription against cruel and unusual punishment, the United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the

extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

Accordingly, for the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground II.

## IV.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be

considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated: <u>February 5, 2025</u>                    <u>/s/ Phillip J. Green</u>
                                                        Phillip J. Green
                                                        United States Magistrate Judge